**Jack HAYWARD, Appellant,**

v.

**Linda L. HAYWARD, Appellee.**

Superior Court of Pennsylvania.

Argued May 15, 2002.
Filed Sept. 25, 2002.

---

Thomas J. Michael, Pittsburgh, for appellant.

Barbara J. Shah, Pittsburgh, for appellee.

Before: FORD ELLIOTT, LALLY–GREEN and HESTER, JJ.

OPINION BY HESTER, J.:

¶ 1 Jack Hayward ("Husband") appeals from the July 26, 2001 order denying his

motion for special relief from a Qualified Domestic Relations Order ("QDRO") dated May 31, 1995, which granted Linda L. Hayward ("Wife") a portion of Husband's military pension benefits. We reverse and remand with instructions consistent with this adjudication.

¶ 2 A brief factual and procedural history follows. The parties were married on December 2, 1963, and separated in May of 1984. The court granted their divorce on October 14, 1986. Husband was an active or reserve member of the military, primarily the United States Army, before, during, and after his marriage to Wife, with the exception of six years, i.e., 1966 through 1972. Husband began to accumulate points, or credits, toward military pension benefits in 1958, and he continued to accumulate points during the time he was in service and the reserves.

¶ 3 Following entry of the divorce decree, the parties negotiated an equitable distribution of marital property resulting in a consent order dated January 11, 1989 (the "consent order") and approved by the court. Relevant to this appeal is paragraph six of the consent order, which reads as follows:

> 6. [Husband] and [Wife] agree to sign consent orders to be prepared by [Wife's] attorney, in the nature of Qualified Domestic Relations Orders, on both of [Husband's] pensions, military and civil service, segregating to [Wife] a share equal to 50% of the *marital portion* of each pension; the relevant dates for these QDRO's are: Date of marriage 12/63; Date of separation 5/84.

Consent Order of Court, 6/11/89, at 3–4 (emphasis added).

¶ 4 On March 5, 1990, Wife's attorney mailed to Husband two copies of the QDRO that she prepared pursuant to the above provision of the consent order. Husband did not sign the QDRO, so Wife

filed a motion for special relief under the Divorce Code, and the court approved and entered the QDRO on March 26, 1990. Since the QDRO impacted Husband's military pension, it was submitted to the Defense Finance and Accounting Service ("DFAS"), a federal agency, for approval, but the DFAS rejected the QDRO for reasons not clear from the parties' briefs or the record.

¶ 5 Accordingly, Wife's attorney crafted a revised QDRO, but again was unable to obtain Husband's voluntary signature on it. Therefore, Wife presented a motion for entry of a domestic relations order on May 31, 1995. At a hearing on the motion, which Husband did not attend, the trial court approved and entered the QDRO (hereinafter "1995 QDRO"). The DFAS also accepted 1995 QDRO.

¶ 6 On July 26, 2001, more than six years after entry of the 1995 QDRO, Husband presented a motion for special relief from the 1995 QDRO, claiming, *inter alia*, that Wife's attorney "unilaterally" obtained court approval of the 1995 QDRO, and Husband never received notice of Wife's motion for entry of a domestic relations order or the hearing on May 31, 1995. Husband further asserted the 1995 QDRO failed to comport with the agreed-upon terms of the consent order. Attached to Husband's motion was a proposed order to modify the 1995 QDRO. The trial court held a hearing and, on July 26, 2001, denied Husband's motion. Husband states in his brief to this Court that the hearing on his motion was not transcribed or otherwise recorded. Husband's brief at 9. On August 27, 2001, Husband filed a notice of appeal from the court's July 26, 2001 order denying his motion for special relief.

¶ 7 Husband argues the 1995 QDRO contains two provisions contrary to the

terms of the consent order. First, he argues the 1995 QDRO granted Wife 50% of his *entire* military pension, including those portions accumulated before and after the relevant dates of marriage and separation, instead of just the marital portion. Husband asserts Wife is not entitled to any portion of the pension benefits that accrued before marriage, i.e., before December of 1963, or after marriage, i.e., after May of 1984. Husband's brief at 10. Also, Husband argues the 1995 QDRO also violates the terms of the consent order by requiring Husband to designate Wife as a beneficiary of any survivor benefit plan annuity available to him. *Id.* He claims this requirement does not appear in the consent order. *Id.*

¶ 8 We must first address the issue of Husband's six-year delay in filing his motion for special relief requesting modification of the 1995 QDRO. Typically, a court may modify an order within thirty days after its entry, according to the following statute:

**42 Pa.C.S. § 5505. Modification of orders**

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal form such order has been taken or allowed.

42 Pa.C.S. § 5505. In *Stockton v. Stockton*, 698 A.2d 1334, 1337 (Pa.Super.1997), we concluded section 5505 applies to petitions to modify QDROs. We stated:

The lower court's authority under 42 Pa.C.S.A. § 5505 to modify or rescind an order is almost entirely discretionary; this power may be exercised *sua sponte,* or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal.

Although 42 Pa.C.S.A. § 5505 gives the trial court broad discretion, the trial court may consider a motion for reconsideration only if the motion is filed within thirty days of the entry of the disputed order. After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, *a fatal defect apparent on the face of the record* or some other evidence of extraordinary cause justifying intervention by the court.

*Id.* (emphasis added) (citations and quotation marks omitted). Absent an allegation of extrinsic fraud or other extraordinary cause, the trial court does not have jurisdiction to grant a petition to modify a QDRO if such petition was filed more than thirty days from the date the QDRO was entered. *Id.* at 1338

¶ 9 Extraordinary circumstances have been found to exist in the context of mistakes made by the court or its officers. *Great Am. Credit Corp. v. Thomas Mini–Markets*, 230 Pa.Super. 210, 326 A.2d 517 (1974) (concluding extraordinary circumstances existed where court misplaced a plaintiff's request for extension of time to answer a defendant's motion for summary judgment, and the plaintiff proceeded on the assumption the extension had been granted). By way of further example, we affirmed a trial court's re-opening of its prior summary judgment order against a mortgagor in order to recalculate damages to a mortgagee where delay and additional expense borne by the mortgagee was due entirely to extraordinarily abusive, dilatory, and contemptuous conduct of mortgagor. *First Union Mortgage Corp. v. Frempong*, 744 A.2d 327, 334–35 (Pa.Su-

per.1999). In such cases, we concluded the court had the discretion to grant relief to the moving party beyond the thirty-day time bar imposed by section 5505. However, our review of the case law reveals that extraordinary circumstances exist in limited circumstances.

■ ¶ 10 Nevertheless, in *Stockton* we stated extraordinary circumstances exist where there is a fatal defect apparent on the face of the record. *Stockton, supra,* 698 A.2d at 1337. In the instant case, we conclude the trial court erred by failing to modify the 1995 QDRO to comport with the consent order entered into by the parties in 1989. Although Husband filed his motion for special relief almost six years after entry of the 1995 QDRO, extraordinary circumstances exist since there is a fatal defect on the face of the record, i.e., the 1995 QDRO utilizes an improper coverture fraction that has the effect of granting Wife 50% of Husband's *entire* military pension rather than 50% of the *marital portion* of his pension as agreed to by the parties in the 1989 consent order and as provided by Pennsylvania law.

¶ 11 When the court entered the 1995 QDRO, it had before it a copy of the consent order the parties entered into in 1989. Wife attached a copy of the consent order to her motion for entry of domestic relations order, which resulted in entry of the 1995 QDRO. The 1995 QDRO, prepared by Wife's attorney, provides in pertinent part as follows:

■ IT IS ORDERED, ADJUDGED and DECREED as follows:

1. A portion of [Husband's] retired pay is marital property subject to distribution by this Court pursuant to [Wife's] claim for equitable distribution of marital property.

2. a) The marital property component of the Plan has been determined as follows: *The numerator is 240 and the denominator is 240, which equals the sum of one or 100%.*

b) [Wife] is awarded 50% of the above component, which is 50%.

c) This award is from the disposable pay of [Husband] in accordance with 10 U.S.C. Section 1408, and should not be reduced by any amount.

. . . .

5. [Husband] shall designate [Wife] as the beneficiary and former spouse under any Survivor Benefit Plan annuity available to him within 60 days of the date of this Order of Court, and shall provide documentation of his compliance with this term to [Wife] within 30 days thereafter.

Domestic Relations Order (1995 QDRO), 5/31/95, at 2–3 (emphasis added). This order, particularly paragraph two, has the effect of granting Wife half of Husband's entire pension in contravention of the parties' agreed-upon distribution pursuant to the 1989 consent order. Particularly, we reiterate the language of paragraph six of the consent order:

6. [Husband] and [Wife] agree to sign consent orders to be prepared by [Wife's] attorney, in the nature of Qualified Domestic Relations Orders, on both of [Husband's] pensions, military and civil service, segregating to [Wife] a share equal to 50% of the *marital portion* of each pension; the relevant dates for these QDRO's are: Date of marriage 12/63; Date of separation 5/84.

Consent Order of Court, 6/11/89, at 3–4 (emphasis added). Although the 1995 QDRO purports to distribute only the marital portion of the pension, the coverture fraction utilized in paragraph 2(a) of the 1995 QDRO, *supra,* by using a "numerator [of] 240 and [a] denominator [of] 240, which equals the sum of one or 100%" and

paragraph 2(b) of the 1995 QDRO, which grants Wife "50% of the above component," has the effect of granting Wife half of Husband's entire pension. Clearly, pursuant to paragraph six of the consent order, the parties intended only to grant Wife half of the *marital portion* of Husband's pension.

> Two distinct methods for equitable distribution of pensions have been established in Pennsylvania. The first is the "immediate offset" method, which divides the benefits at the time of equitable distribution by assigning a present value to the marital portion of the pension, and awarding that share to a party. The second method, entitled "deferred distribution," does not incorporate present value figures. Rather, the court retains jurisdiction and distributes the benefits when they enter pay status or when they mature.

*Endy v. Endy*, 412 Pa.Super. 398, 603 A.2d 641, 643 (1992) (citations omitted). The deferred distribution method was utilized in the instant case. Under the deferred distribution method, a "coverture" fraction is applied to the pension benefits when they enter pay status and the court retains jurisdiction and apportions the benefits when they enter pay status or mature. *Miller v. Miller*, 395 Pa.Super. 255, 577 A.2d 205, 209 (1990) (describing deferred distribution method as "reserved jurisdiction method"). In calculating the marital portion of pension benefits to be distributed, courts employ a coverture fraction:

> [a] coverture fraction is calculated by determining the ratio of the length of marriage to the number of years of employment. *The numerator of the fraction is the marital period of the employee-spouse's participation in the pension plan; the fraction denominator is the total period of time during which the employee-spouse accrued benefits.*

*Endy, supra*, 603 A.2d at 644 n. 1 (emphasis added).

¶ 12 Clearly, the 1995 QDRO is flawed in that it employs a coverture fraction of 240/240 or one, thereby failing to eliminate from distribution those pension benefits accrued prior to marriage and after separation. Accordingly, we are constrained to remand for proper calculation of the marital portion of Husband's pension benefits to which Wife is entitled under the consent order.

■ ¶ 13 Moreover, the 1995 QDRO, by granting Wife half of Husband's entire military pension, contravenes Pennsylvania law. "[T]he amount of pension funds accrued during marriage is marital property and subject to equitable distribution." *Endy, supra*, 603 A.2d at 643. Correspondingly, pension benefits accruing prior to date of marriage and after date of final separation are not subject to equitable distribution. *See id.* at 644. Accordingly, by distributing portions of Husband's pension that accrued prior to the marriage and after separation, the 1995 QDRO does not only violate the terms of the consent order but also violates Pennsylvania law.

¶ 14 Husband also asserts extraordinary circumstances existed in that Wife failed to notify him of her presentation of the 1995 QDRO before the court. This issue is moot in that we have determined a remand is necessary on the basis described above, i.e., the error in the calculation of the marital portion of the pension benefits.

¶ 15 Finally, during the pendency of this appeal, Wife submitted to this Court an application to refer the case for modification or enforcement proceedings, alleging, *inter alia*, Husband "executed a [Veteran's

Administration] waiver on his military retired pay, to bypass the effect of the QDRO." Application to Refer Case to Trial Court for Modification/Enforcement Proceedings, 8/20/02, at ¶ 8. We hereby grant Wife's application.

¶ 16 Order vacated. Case remanded for proceedings consistent with this adjudication. Jurisdiction relinquished.