J-S39007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| REBECCA J. TYLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ZANE M. TYLER, | |
| Appellant | No. 835 WDA 2016 |

Appeal from the Order Entered May 19, 2016
In the Court of Common Pleas of McKean County
Civil Division at No(s): 962 C.D. 1995

| | |
|---|---|
| REBECCA J. TYLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ZANE M. TYLER, | |
| Appellee | No. 876 WDA 2016 |

Appeal from the Order Entered May 19, 2016
In the Court of Common Pleas of McKean County
Civil Division at No(s): 962 C.D. 1995

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:        **FILED SEPTEMBER 01, 2017**

Zane M. Tyler (Husband) and Rebecca J. Tyler (Wife) each appealed

from the order entered on May 19, 2016, in response to Wife's petition for

_____

[*] Retired Senior Judge assigned to the Superior Court.

special relief, requesting clarification of the family law master's 1997 report and recommendation and a qualified domestic relations order (QDRO), dated June 14, 1999. The May 19, 2016 order outlined a payment plan for the $17,224.17 balance owed to Wife from Husband, relating to Wife's equitable share of Husband's military pension including an interest rate of 2.1% per year. We affirm.

We begin by setting forth the trial court's recitation of the facts as stated in its opinion filed pursuant to Pa.R.A.P. 1925(a) in connection with Husband's appeal:

> As part of the parties' divorce, equitable distribution was made. The Family Law Master ("FLM") issued a Report and Recommendations at the culmination of the parties' final divorce hearing. This Report was dated January 17, 1997, and subsequently adopted as an Order of Court on January 29, 1997 …. The Report provided *inter alia* that:
>
> > If [Husband] is able to do so, it is recommended that he pay to [Wife] approximately $77,500, or fifty percent of the present value of his military pension as of December 19, 1990. If [Husband] is unable to make a lump sum payment in this amount or arrange to pay that amount to [Wife] in installment payments over a reasonably short time, then it is recommended that [Wife's] interest in the military pension be paid to her after [Husband] retires in a percentage of his monthly installments equal to 50% of the marital portion of the pension calculated according to the formula approved in Brown v. Brown, 447 Pa. Super. 424, 669 A.2d 969, 974 (1995). Counsel should, in that event, prepare a Qualified Domestic Relations Order designed to effect this result.
>
> 1997 Report and Recommendations, Page 11.

Subsequently, counsel for both parties submitted a Qualified Domestic Relations Order ("QDRO"), which was executed … on June 14, 1999. The QDRO stated as follows:

(b) [Husband] shall withdraw $77,500.00 from his military retirement account.
(c) [Husband] shall do so by paying no more than 50% of the present value of his monthly military retirement pension account.
(d) Said payments shall continue until the sum total of $77,500.00 is paid to [Wife].

Qualified Domestic Relations Order, Tyler v. Tyler, 962 C.D. 1995 Dated June 14, 1999.

The parties were divorced on January 5, 1999. On January 9, 2013, Wife filed a Petition for Special Relief in which she sought clarification of the FLM's January 17, 1997 Report. Prior to said filing, Defense Finance and Accounting Services, overseers of Husband's military pension, indicated that it had overpaid Wife the amount of $19,290.00 and, therefore, sought reimbursement for this overpayment, plus interest. Wife paid the $19,290.00 plus an additional $5,519.01 in interest, for a total of $24,809.01. The [c]ourt referred the Petition for Special Relief to the FLM for resolution.

The FLM issued a Report and Recommendations on June 7, 2013. The FLM concluded that the QDRO did not follow the recommendations as outlined in the 1997 Report. In so concluding, the FLM stated that, rather than Wife['s] receiving a sum certain to be paid in installments, the QDRO should have provided for a percentage of Husband's benefit based upon the value of the pension as of the date of the parties' separation— December 19, 1990. In support of this recommendation, the FLM cited Brown, *supra*; Smith v. Smith, 936 A.2d 246 (Pa. 2007); and 23 Pa.C.S.[] § 3501(e)(1) and (2). Therefore, it was the FLM's Recommendation that the QDRO may have been drafted in error in regards to the computation method for distributing the marital portion of Husband's pension owed to Wife.

Husband filed Exceptions to the June 2013 Report and Recommendations in which he argued that the parties never anticipated paying, or receiving, anything more than

$77,500.00. Essentially, he argued that the language in the 2013 Report suggested that Wife should be receiving a higher amount from the pension than $77,500.00 but that the parties did not contemplate a lifetime sharing of [Husband's] pension. Finally, he argued that the [c]ourt should not consider the FLM's opinion of the then sixteen (16) year old QDRO because it was irrelevant for a determination of this matter.

These Exceptions were overruled by this [c]ourt in its Opinion and Order dated July 30, 2013 and filed August 1, 2013. The [c]ourt reasoned that the FLM intended to distribute to Wife 50% of Husband's pension, as then valued. This amount was $77,500.00 if it was paid immediately, but the FLM contemplated the actual dollar amount being more if it were distributed via long-term installment payments. No objection or appeal was filed as to this Order, and it became final after thirty (30) days.

In January 2016, Wife's counsel requested a [h]earing. A [h]earing was held on April 7, 2016. During the [h]earing, Wife prayed for an equitable resolution to the QDRO that was drafted in error; namely that she continue to receive payments in accordance with the intention of the FLM's recommendations or that she receive payment of interest on the $77,500.00 lump sum, as she has been paid over a period of almost twenty (20) years.

To date, Wife received [a] net total of $71,254.99 from Husband's military pension. Although Wife received total payments in the amount of $96,064.00, Wife was forced to repay $24,809.01 in principal and interest for alleged "overpayments" to her.

Essentially, both parties submitted the matter for interpretation, admitting the QDRO was poorly drafted and the parties['] having failed to reach any agreement on how the QDRO should be interpreted.

Trial Court's Rule 1925(a) Opinion (TCO-Husband's Appeal), 8/23/16, at 1-4.[1]

After the April 7, 2016 hearing was held and upon receipt of the FLM's report and recommendation, the trial court issued the order presently on appeal. The order provided that Wife was owed a balance of $17,224.17 "as of May 2012 for her equitable share of [Husband's] military pension at an interest rate of 2.1% per annum." Trial Court Order, 5/19/16. The court directed that the interest that accrued from May 2012 to June 2016 totaled $1,476.86 and was to be paid by Husband to Wife within thirty days. *Id.* The court further directed that Husband was to pay Wife $733.47 per month for twenty-four months, which would satisfy Husband's debt to Wife.

Both Husband and Wife filed timely appeals and complied with the court's orders to file statements of errors complained of on appeal. Husband now raises two issues for our review:

> 1. Did the lower [c]ourt abuse its discretion and err in considering [Wife's] Petition for Special Relief?
>
> 2. If the lower [c]ourt properly considered [Wife's] Petition for Special Relief, did the lower [c]ourt act properly and within its discretion in promulgating its Order of May 19, 2016?

Husband's brief at 4. Wife raises one issue for our review:

---

[1] The factual rendition in the court's Rule 1925(a) opinion relating to Husband's appeal is essentially a mirror image of the one issued in response to Wife's appeal. *See* Trial Court Rule 1925(a) Opinion (TCO-Wife's Appeal), 8/11/16, at 1-3.

Did the trial court abuse its discretion when it ruled that [Wife] was only entitled to a limited number of payments from [Husband's] military pension[?]

Wife's brief at 12.

To begin, we quote the trial court's introductory paragraph in its opinion relating to Husband's appeal, which states:

Simply put, the [c]ourt and the parties determined at hearing that the QDRO had been poorly drafted and did not reflect the FLM's recommendations. Furthermore, it was believed that there was no way to redraft the QDRO so late in time. The parties' arguments illustrate that Husband and Wife were never in agreement with the concept of the pension distribution. Husband argued that the QDRO should be interpreted to mean that Wife should only receive a share of Husband's pension until she collected the amount of $77,500.00[.] Wife interpreted the QDRO to mean that if Husband could not immediately pay the $77,500.00 due her, then Wife should receive 50% of Husband's pension payments in perpetuity. Like the vexing QDRO, neither of these arguments comports with the FLM's recommendations.

TCO-Husband's Appeal at 5.

The main thrust of Husband's argument in his brief is that the court did not have the power to entertain Wife's petition for special relief because its actions violated section 3332 of the Domestic Relations Code entitled "Opening or vacating decrees[,]" which states:

A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter.[2] The motion may lie where it is alleged that the decree was procured by intrinsic

_____

[2] Section 5505 provides that a court "may modify or rescind any order within 30 days after its entry … if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505.

fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. **A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree.** Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa.C.S. § 3332 (emphasis added). Thus, Husband claims that because Wife's petition for special relief was filed 14 years after the divorce decree was entered and 12½ years after the QDRO was issued, the court abused its discretion by considering the petition, *i.e.*, the court was without jurisdiction.

Although the trial court did not specifically address Husband's jurisdiction argument in its opinion, it explained the reasons for its decision as follows:

> In her original report and recommendations, the FLM suggested that Husband had two (2) options: the first was to make a lump sum payment to Wife in the amount of $77,500.00 (her share of the pension as then valued) or pay Wife a coverture fraction not to exceed 50% of Husband's pension payments when Husband's pension finally reached pay status. The point of the first option being to settle the matter quickly; the gist of the second option being that Wife should be allowed to collect more money (*i.e.* interest) if she had to wait years to receive money that was determined to be hers in 1997. Admittedly, the FLM did not put an end date for Wife's share of pension benefits if she were to be paid according to a coverture fraction. The FLM reiterated the same theme in her 2013 report.
>
> To effectuate the FLM Recommendations, a QDRO was drafted. The QDRO was certainly not the product of the parties' agreement as Husband suggested in his Concise Statement. There was no testimony to indicate the QDRO was anything other than a way to effectuate the FLM's Recommendations.

Furthermore, it was apparent that Husband and Wife had different expectations at the time the QDRO was drafted just as they have different interpretations of the QDRO now.

As far as Husband['s] paying Wife her share of the military pension, Husband clearly did not elect to pay the $77,500.00 immediately in full. Instead, he chose to make "installment payments" over time out of his pension. However, these installments were improperly taken from Husband's pension as he was sharing half of his pension when he should have only been sharing a coverture fraction.

Because the QDRO had been poorly drafted so many years ago, the [c]ourt could not redraft the QDRO to properly reflect the FLM's recommendations. However, the [c]ourt was not without remedy as Wife was appealing to the equitable powers of this [c]ourt. The question for the [c]ourt then became whether Wife could equitably be awarded interest on the installment payments owed to her for the original $77,500.00 and how could it be distributed to her if she were so entitled.

TCO-Husband's Appeal at 5-6 (footnote omitted).

The decision in **Hayward v. Hayward**, 808 A.2d 232 (Pa. Super. 2002), provides guidance in this matter. In **Hayward**, the husband filed a petition for special relief six years after the entry of a QDRO, claiming *inter alia* that the QDRO "failed to comport with the agreed-upon terms of the consent order[,]" which memorialized the distribution of the marital property. **Id.** at 234. Specifically, the husband asserted that the QDRO granted the wife 50% of his entire military pension rather than the portion accumulated from the date of the marriage to the date of separation. **Id.** Prior to addressing the issues raised by the husband, this Court noted the husband's six-year delay in filing his request for relief, recognizing that 42 Pa.C.S. § 5505 only allows a court to modify a QDRO within thirty days of its

entry. Then, relying on **Stockton v. Stockton**, 698 A.2d 1334 (Pa. Super. 1997), the **Hayward** court quoted the following:

> The lower court's authority under 42 Pa.C.S.[] § 5505 to modify or rescind an order is almost entirely discretionary; this power may be exercised *sua sponte*, or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal.
>
> Although 42 Pa.C.S.[] § 5505 gives the trial court broad discretion, the trial court may consider a motion for reconsideration only if the motion is filed within thirty days of the entry of the disputed order. After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, *a fatal defect apparent on the face of the record* or some other evidence of extraordinary cause justifying intervention by the court.
>
> **Id.** (emphasis added) (citations and quotation marks omitted). Absent an allegation of extrinsic fraud or other extraordinary cause, the trial court does not have jurisdiction to grant a petition to modify a QDRO if such petition was filed more than thirty days from the date the QDRO was entered. **Id.** at 1338.

**Hayward**, 808 A.2d at 235 (quoting **Stockton**, 698 A.2d at 1337). Notably, the emphasized language contained in the **Hayward** opinion's quoting of **Stockton** employs the language contained in 23 Pa.C.S. § 3332, although not identified as such.

The **Hayward** decision further explains that "[e]xtraordinary circumstances have been found to exist in the context of mistakes made by the court or its officers[.]" **Hayward**, 808 A.2d at 235. In those instances,

"the court had the discretion to grant relief to the moving party beyond the thirty-day time bar imposed by section 5505." *Id.* at 236. This Court in *Hayward* determined that the trial court

> erred by failing to modify the 1995 QDRO to comport with the consent order entered into by the parties in 1989. Although [the husband] filed his motion for special relief almost six years after entry of the 1995 QDRO, extraordinary circumstances exist since there is a fatal defect on the face of the record, *i.e.*, the 1995 QDRO utilizes an improper coverture fraction that has the effect of granting [the wife] 50% of [the husband's] entire military pension rather than 50% of the marital portion of his pension as agreed to by the parties in the 1989 consent order and as provided by Pennsylvania law.

*Id.*

Likewise, we recognize that the errors in the QDRO here similarly reveal a fatal defect on the face of the record, which we conclude rises to the level of an extraordinary circumstance.[3] Specifically, in the case before us, the QDRO does not comport with the FLM's report and recommendation. Notably, just as in *Hayward*, the QDRO makes no mention that the sum due takes into consideration Wife's entitlement to an amount that is 50% of only the marital portion of Husband's military pension. However, beyond that, it

---

[3] As an aside, we note that the trial court here did not cite section 3332 of the Domestic Relations Code as giving it the power to address the parties' claims; rather, it relied on its equitable powers, which we conclude was an insufficient reason to allow it to accept jurisdiction of the matter. *See Hassick v. Hassick*, 695 A.2d 851, 853 (Pa. Super. 1997) (stating that "while a court possesses equitable powers in divorce proceedings, those powers do not allow the court to ignore the limited circumstances set forth in [s]ection 3332 for vacating a final decree….").

is evident that neither party nor the court was able to properly interpret the QDRO and how it aligns with the FLM's recommendation. Thus, based on ***Hayward***, we conclude that the court here was permitted to address Wife's petition for special relief. We further point out that the ***Brown*** decision, relied upon by the FLM, extensively explains the manner in which a deferred distribution of a pension should be calculated, and directed that the failure to include an award of interest was an error that should be remedied on remand. ***See Brown***, 669 A.2d at 975 n.3. Therefore, we conclude that the trial court here did not err in addressing Wife's petition for special relief. Clearly, as recognized by the trial court, clarification was necessary because the QDRO confirmed by the court in 1999 did not correspond with the dictates of the FLM's recommendation and report; essentially, the trial court had erred by accepting the QDRO in 1999.[4]

Now, turning to Wife's issue,

> [w]e need [to] determine whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." Specifically, we measure the circumstances of the case and the conclusions drawn therefrom by the trial court against the provision of 23 Pa.C.S.[] § 3502(a),

---

[4] Husband argues that the ***Hayward*** decision is distinguishable from the situation presented to us in this appeal, noting that in ***Hayward*** no reference is made to section 3332 and claiming also that here no fatal defect is apparent on the face of the record. As discussed above, we disagree with Husband's interpretation of ***Hayward*** and its comparison to the instant case.

- 11 -

and the avowed intentions of the Divorce Code, namely to "effectuate economic justice between [the] parties … and insure a fair and just determination of their property rights."

*Palladino v. Palladino*, 713 A.2d 676, 678 (Pa. Super. 1998) (quoting *Butler v. Butler*, 621 A.2d 659, 663-64 (Pa. Super. 1993) (footnote omitted)).

Wife acknowledges that "there were multiple errors committed in the drafting of the QDRO." Wife's brief at 19. However, Wife claims that the FLM intended that she "should receive lifetime payments if … [Husband] was unable to pay the lump sum up front." *Id.* at 20. Wife also asserts that the FLM intended that Wife was to be paid 50% of Husband's total monthly military pension and that the coverture fraction should not be taken into account. Wife appears to accept the fact that if paid at the time of the divorce, the $77,500.00 amount due her was correct. However, she contends that "the FLM contemplated that the amount would be more if it were distributed via long-term pay out." *Id.* at 21. Thus, based upon this assertion, Wife takes issue with the trial court's method of calculating interest to "make [her] whole." *Id.*

To support her position, Wife cites the unpublished memorandum decision in *Grothey v. Grothey*, 144 A.3d 197 (Pa. Super. 2016) (unpublished memorandum), arguing that it "is factually and procedurally similar to this case." Wife's brief at 22. We alert Wife that citing memorandum decisions is prohibited by our Internal Operating Procedures (IOP) § 65.37. *See Hunter v. Shire US, Inc.*, 992 A.2d 891 (Pa. Super.

2010) (stating that pursuant to § 65.37, an "unpublished memorandum decision shall not be relied upon or cited by a party") (quoting **Schaaf v. Kaufman**, 850 A.2d 655, 658 (Pa. Super. 2004)). Moreover, "it is not binding on us." **Id.**

Wife also cites **Berrington v. Berrington**, 633 A.2d 589 (Pa. 1993), and **Brown v. Brown**, 690 A.2d 700 (Pa. 1997), contending that the court should have analyzed the instant matter with reference to those cases. However, Wife does not identify in what way the court's determination was inconsistent with those cases and we refuse to delve into an issue in an attempt to make Wife's arguments for her. Thus, we conclude that the trial court did not abuse its discretion and we accept the method it utilized to "effectuate economic justice between the parties." **See Palladino**, 713 A.2d at 678. The trial court's decision is affirmed as a reasonable way to correct a long-standing, confusingly drafted QDRO that the court in 1997 had accepted as a way to achieve the FLM's recommendations.

Order affirmed.

Judge Strassburger joins this memorandum.

Judge Bowes files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/2017