J-S02029-20
J-S02030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRENDA L. SWARTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EARL A. SWARTZ | : | |
| | : | |
| Appellant | : | No. 1457 MDA 2019 |

Appeal from the Order Entered July 31, 2019
In the Court of Common Pleas of Union County
Civil Division at No(s):  CV-12-0512

| | | |
|---|---|---|
| BRENDA L. SWARTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EARL A. SWARTZ | : | |
| | : | |
| Appellee | : | No. 1488 MDA 2019 |

Appeal from the Order Entered July 31, 2019
In the Court of Common Pleas of Union County
Civil Division at No(s):  CV-12-0512

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                    **FILED JANUARY 29, 2020**

Appellant, Earl A. Swartz ("Husband"), and Cross-Appellant, Brenda L.

Swartz ("Wife"), appeal from the order entered in the Union County Court of

Common Pleas, which granted in part and denied in part Husband's motion to

amend a Qualified Domestic Relations Order ("QDRO").  We affirm.

In its opinion, the trial court accurately set forth the relevant facts and

procedural history of this case. Thus, we have no reason to restate them.[1]

At No. 1457 MDA 2019, Husband raises the following issue for our review:

> WHETHER THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN DETERMINING THAT [WIFE] IS ENTITLED TO THE BENEFIT OF [HUSBAND'S] SALARY ADJUSTMENTS FOR THE PURPOSE OF DETERMINING [WIFE]'S *PRO RATA* SHARE OF [HUSBAND'S FEDERAL EMPLOYEES' RETIREMENT SYSTEM ("FERS")] PENSION WHEN THE PARTIES' MARITAL SETTLEMENT AGREEMENT IS SILENT AS TO ANY SUCH ADJUSTMENTS?

(Husband's Brief at 1).

At No. 1488 MDA 2019, Wife raises the following issue for our review:

> DID THE [TRIAL] COURT ERR BY GRANTING HUSBAND'S MOTION TO AMEND [THE QDRO] FILED IN EXCESS OF FIVE (5) YEARS FOLLOWING THE ENTRY OF THE [QDRO], THEREBY VIOLATING THE VALID MARRIAGE SETTLEMENT AGREEMENT, 42 PA.C.S.[A.] § 5505 AND DOING SO WITHOUT ANY SUPPORTING FACTS OF RECORD?

(Wife's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael T. Hudock, we conclude the parties' issues merit no relief. The trial court opinion

---

[1] On August 29, 2019, Husband timely filed a notice of appeal at No. 1457 MDA 2019. Wife timely filed a cross-appeal on September 10, 2019, at No. 1488 MDA 2019. **See** Pa.R.A.P. 903(b) (explaining if timely notice of appeal is filed by party, any other party may file notice of appeal within 14 days of date on which first notice of appeal was served, or within time otherwise prescribed by this rule, whichever period last expires). The cross-appeals were mistakenly listed consecutively. On January 14, 2020, this Court issued an order consolidating the cross-appeals *sua sponte*.

comprehensively discusses and properly disposes of the questions presented. (**See** Opinion in Support of Order, filed July 31, 2019, at 3-7) (finding: regarding court's jurisdiction to modify QDRO, extraordinary circumstances exist to justify modification; due to policy change beyond parties' control or contemplation, QDRO now grants Wife portion of annuity supplement to which she was not entitled pursuant to terms of parties' marital settlement agreement ("MSA") at time they executed it; MSA is silent as to annuity supplement; MSA specifically identified Wife's entitlement to "Husband's gross monthly annuity," former spouse survivor annuity, and Husband's Thrift Savings Plan; MSA makes clear parties did not intend for Wife to receive portion of annuity supplement, and mutual mistake has occurred as result of policy change; even if MSA was ambiguous, Wife would not be entitled to annuity supplement; MSA and QDRO would not have awarded Wife portion of annuity supplement at time parties executed MSA or court entered QDRO; regarding Husband's salary adjustments, court does not find mutual mistake; MSA makes clear Wife is entitled to portion of "Husband's gross monthly income"; parties made no exceptions in MSA for Husband's salary adjustments, even though MSA specifically contemplated Husband's service for periods of time outside parties' marriage[2]). Accordingly, we affirm based

---

[2] Further, in 2004, the legislature added a subsection to the Divorce Code regarding the distribution of defined benefit pensions, at 23 Pa.C.S.A. § 3501(c). **See** 23 Pa.C.S.A. § 3501(c)(1) (stating in case of marital portion of

- 3 -

on the trial court's opinion.

Order affirmed.

Judge Musmanno joins this memorandum.

President Judge Emeritus Bender concurs in the result

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/29/2020

---

defined benefit retirement plan being distributed by means of deferred distribution, defined benefit plan shall be allocated between its marital and non-marital portions **solely** by use of coverture fraction). "Thus, the non-employee spouse is permitted to enjoy increases in value occasioned by continued employment of the worker." **Smith v. Smith**, 595 Pa. 80, 102, 938 A.2d 246, 259 (2007) (internal citation omitted). In other words, in general, "the determination of the marital potion of a defined benefit pension will entail a straightforward application of the coverture fraction to the final total value of the pension, even though the value has increased due to years of postseparation employment." **Id.** Here, Husband's reliance on **Katzenberger v. Katzenberger**, 534 Pa. 419, 633 A.2d 602 (1993) affords him no relief because that case pre-dates the legislature's addition of Section 3501(c).

2019 JUL 31 PM 3: 29

BRENDA L. SWARTZ, : IN THE COURT OF COMMON PLEAS
            Plaintiff : OF THE 17TH JUDICIAL DISTRICT
            : OF PENNSYLVANIA
    vs. : UNION COUNTY BRANCH
            :
EARL A. SWARTZ, : CIVIL ACTION - LAW
            Defendant : NO. 12-0512

## OPINION

### HUDOCK, P.J., July 31, 2019

Defendant Earl A. Swartz filed a Motion to Amend Qualified Order on January 23, 2019. Plaintiff Brenda Swartz filed a Response to Defendant's Motion to Amend Qualified Order and Plaintiff's Counterclaim for Attorney Fees. Defendant asserts that he will receive an "annuity supplement" upon retirement "which is a supplement annuity received by law enforcement and a few others, such as members of Congress, as additional compensation when they retire earlier than Social Security benefits begin." Motion to Amend, Paragraph 6. Previously, the Office of Personnel Management considered the "annuity supplement" separate from the apportionment to a former spouse through a Qualified Order that is silent as to the annuity supplement. Defendant alleges that now the Office of Personnel Management will apply the state court ordered marital share to both the basic annuity and the annuity supplement when not specifically addressed. Defendant asserts that the

1

parties did not contemplate the annuity supplement, and therefore, the contract was the product of their mutual mistake. Additionally, Defendant asks that the Court reform the Qualified Order to specific exclude Plaintiff's entitlement to "salary adjustments."

The parties married November 4, 1984. The parties executed a Marriage Settlement Agreement, Agreement, on November 25, 2013. The Agreement contained a provision titled "Husband's FERS Benefits" which reads:

"(11) Husband is a participant in the Federal Employees Retirement System (hereinafter referred to as "FERS"). Husband's FERS benefits have accrued during the marriage. Wife is to be awarded by means of a Qualified Order fifty-five per cent (sic) (55%) of the fraction of Husband's gross monthly annuity whose numerator is the number of months of Federal civilian and military service that Husband performed during the marriage and whose denominator is the total number of months of Federal civilian and military service performs by Husband. The marriage shall be identified as beginning November 4, 1984 and to have ended July 11, 2012 for purposes of calculating the former spouse annuity and former spouse survivor annuity. In the event Wife dies before Husband, the former spouse annuity benefit shall be made payable to Bethany M. Swartz and Bradley Swartz.

A former spouse survivor annuity shall be awarded to Wife equal to fifty per cent (sic) (50 %) of Husband's employee annuity. Wife's share of Husband's employees annuity will be reduced by the amount of fifty per cent (sic) (50 %) of the costs associated with providing the former spouse annuity awarded in the above paragraph and Husband's share of the employee annuity will be reduced by the amount of fifty per cent (sic) (50%) of the costs associated with providing the former spouse annuity awarded in the above paragraph. During Wife's lifetime, the United States Office of Personnel Management shall be directed to pay Wife's share of the gross annuity or former spouse survivor annuity directly to Wife.

The United States Office of Personnel Management shall be directed by Qualified Order not pay Husband any refund of his employee contributions so that any awards to Wife as state above shall not be adversely affected.

The Court of Common Pleas issuing a Divorce Decree in this matter shall retain jurisdiction as part of the decree in divorce for the purpose of enforcement, amendment or modification of any Qualifying Order necessary for the acceptance of the United States Office of Personnel Management.

The above awards of the monthly annuity and former spouse survivor annuity are equitable distributions of property pursuant to the Divorce Code of the Commonwealth of Pennsylvania and not awards of alimony, spousal support or alimony pendente lite.

2

Both parties agree and authorize the Court of Common Pleas having jurisdiction in this matter to execute the Qualified Order, a copy of which is attached hereto and identified as "Exhibit A" and approved by the parties. The Qualified Order to be issued shall accompany the Divorce Decree submitted upon transmittal of the record by praecipe."

The Court granted the parties' request for divorce by final Decree dated December 20, 2013. The Court entered a Qualified Order on December 20, 2013. The parties' Agreement and the Qualified Order are silent as to the annuity supplement and "salary adjustments." Defendant's Motion to Amend Qualified Order was filed January 23, 2019, in excess of five years from the entry of the Qualified Order and Decree.

Both parties submitted briefs concerning the Court's jurisdiction to entertain Husband's motion filed in excess of five years following the entry of the Qualified Order. The Superior Court in *Haywood v. Haywood*, 808 A.2d 232 (Pa. Super. 2002) addressed a similar issue holding that extraordinary circumstances existed to modify the parties' QDRO even after a six-year delay. The improper QDRO in *Haywood* had the effect of granting "Wife 50% of Husband's entire military pension rather than 50% of the marital portion of his pension as agreed to by the parties in the 1989 consent order and as provided by Pennsylvania law." *Hayward v. Hayward*, 808 A.2d 232, 236 (Pa. Super. 2002).

The Court wrote:

> We must first address the issue of Husband's six-year delay in filing his motion for special relief requesting modification of the 1995 QDRO. Typically, a court may modify an order within thirty days after its entry, according to the following statute:
>
> 42 Pa.C.S. § 5505. Modification of orders
>
> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal form such order has been taken or allowed.
>
> 42 Pa.C.S. § 5505.
>
> In *Stockton v. Stockton*, 698 A.2d 1334, 1337 (Pa.Super. 1997), we concluded section 5505 applies to petitions to modify QDROs. We stated:

3

The lower court's authority under 42 Pa.C.S.A. § 5505 to modify or rescind an order is almost entirely discretionary; this power may be exercised *sua sponte*, or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal.

Although 42 Pa.C.S.A. § 5505 gives the trial court broad discretion, the trial court may consider a motion for reconsideration only if the motion is filed within thirty days of the entry of the disputed order. After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of extraordinary cause justifying intervention by the court. *Id.* (emphasis added) (citations and quotation marks omitted). Absent an allegation of extrinsic fraud or other extraordinary cause, the trial court does not have jurisdiction to grant a petition to modify a QDRO if such petition was filed more than thirty days from the date the QDRO was entered. *Id.* at 1338.

Extraordinary circumstances have been found to exist in the context of mistakes made by the court or its officers. *Great Am. Credit Corp. v. Thomas Mini-Markets*, 230 Pa. Super. 210, 326 A.2d 517 (Pa.Super. 1974) (concluding extraordinary circumstances existed where court misplaced a plaintiff's request for extension of time to answer a defendant's motion for summary judgment, and the plaintiff proceeded on the assumption the extension had been granted). By way of further example, we affirmed a trial court's reopening of its prior summary judgment order against a mortgagor in order to recalculate damages to a mortgagee where delay and additional expense borne by the mortgagee was due entirely to extraordinarily abusive, dilatory, and contemptuous conduct of mortgagor. *First Union Mortgage Co. v. Frempong*, 1999 PA Super 343, 744 A.2d 327, 334-35 (Pa.Super. 1999). In such cases, we concluded the court had the discretion to grant relief to the moving party beyond the thirty-day time bar imposed by section 5505. However, our review of the case law reveals that extraordinary circumstances exist in limited circumstances.

Nevertheless, in *Stockton* we stated extraordinary circumstances exist where there is a fatal defect apparent on the face of the record. *Stockton, supra*, 698 A.2d at 1337.

*Hayward v. Hayward*, 808 A.2d 232, 236 (Pa. Super. 2002).

The Court finds this case to be similar in that extraordinary cause exists to modify the parties' Qualified Order as to the annuity supplement. Due to a change outside the parties' control or contemplation the Qualified Order has the effect of granting Wife a portion of the supplement annuity to which she was not entitled pursuant to the terms of the parties' Agreement at the time it was entered.

4

Plaintiff specifically denies that the Agreement between the parties contained any specific agreement to exclude any benefit of retirement. "The alleged mistake did not enter into Wife's contemplation when the Marriage Settlement Agreement was entered, it was not an essential fact which formed inducement on her part..." Plaintiff's Response to Defendants Motion to Amend Qualified Order and Plaintiff's Counterclaim for Attorney Fees.

Established Pennsylvania law states:

When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

In other words, the intent of the parties is generally the writing itself. In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. Thus, The court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*See also Melton v. Melton,* 831 A.2d 646, 653-654 (Pa. Super. 2003), (stating court may take into account attendant circumstances to determine parties' intent, when parties' intentions are unclear). "Before a court will interpret a provision in...a contract in such a way as to lead to an absurdity or make the...contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended."

Additionally, this "Commonwealth has accepted the principle in Restatement (Second) of Contracts § 205 that 'every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. '" "The duty of 'good faith' has been defined as 'honesty in fact in the conduct or transaction concerned. '"

The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

A similar requirement has been developed in common law called the "doctrine of necessary implication," which states:

5

In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

"Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent." "In the absence of an express term, the doctrine of necessary implication may act to imply a requirement necessitated by reason and justice without which the intent of the parties is frustrated."

"The duty of good faith and the doctrine of necessary implication apply only in limited circumstances. Implied duties cannot trump the express provisions in the contract." "Both the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract."

*Stamerro v. Stamerro*, 889 A.2d 1251, 1258-59 (Pa. Super. 2005(internal citations omitted).

It is clear from the parties' Agreement that the parties did not intend for Plaintiff to receive a portion of the annuity supplement, and a mutual mistake has occurred as result of the change in policy. The Agreement is silent as to the supplemental annuity; however, it specifically identifies Plaintiff's entitlement to "Husband's gross monthly annuity," former spouse survivor annuity, and (in a separate section) Husband's Thrift Savings Plan. Agreement, page 6. Further, each party specifically released the other from any additional claims.

Even if the Court were to find the Agreement to be unclear and consider attendant circumstances, the Court would still find in Defendant's favor. The Agreement and the subsequent Qualified Order would not have entitled Plaintiff to a portion of the supplemental annuity at the time of the parties' Agreement or the entry of the order. The Court would consider the legal effect of the parties' Agreement at the time it was entered.

A recent decision, *Conway v. Conway*, is instructive, although not controlling. The parties entered into an agreement regarding their marital property including division of Husband's police

6

pension. At the time the parties entered their agreement, a former spouse was treated as a spouse, pursuant to a city ordinance. The Court noted: "The record makes clear the parties intended for Wife to receive pension benefits as a spouse or surviving spouse under the Plan". *Conway v. Conway*, 2019 PA Super 138, 209 A.3d 367 (Pa. Super. 2019). Subsequent to the parties' agreement, the city changed the ordinance and a former spouse was no longer treated as a spouse. The plan administrator rejected Wife's proposed QDRO due to the change in the ordinance. The Trial Court was reversed for considering the date the Association received the plan as controlling (after the change to the ordinance) and determinative of Wife's entitlement to benefits. *Id.*

The Court does not find a mutual mistake occurred in regards to Defendant's salary adjustments. The Agreement is clear that Plaintiff is entitled to a portion of "Husband's gross monthly annuity." Agreement, page 6. The parties made no exception for Husband's salary adjustments, although the Agreement specifically contemplated Husband's service for periods of time outside of the marriage.

The Court grants Defendant's Motion to Amend Qualified Order. Defendant shall submit a proposed Qualified Order to the Court within 60 days which specifically excludes the Defendant's supplemental annuity pursuant to the parties' Agreement. The Court denies Plaintiff's Counterclaim for Attorney's fees.

BY THE COURT:

_____

MICHAEL T. HUDOCK, P.J.

PROTHONOTARY-CLERK OF COURTS,
UNION COUNTY, PA
CERTIFIED FROM THE RECORD ON THIS DATE

AUG - 1 2019

BY. Ulysha Hauser, Deputy

7

c:        Martin R. Wilson, Esquire, Counsel for Plaintiff

             Brian L. Kerstetter, Esquire, Counsel for Defendant

             The Honorable Louise O. Knight, S.J.

             Jenna A. Neidig, Esquire, Law Clerk

             Administrative Assistant

e-copies:     The Honorable Michael T. Hudock, P.J.

             The Honorable Michael H. Sholley, J.