2018 PA Super 242

| JEFFREY S. ZEHNER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIKA L. ZEHNER | : | No. 1645 WDA 2017 |

Appeal from the Order Entered October 6, 2017
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s):  FD-11-6066-002

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.                    **FILED AUGUST 31, 2018**

Jeffrey S. Zehner ("Husband") appeals from the Order directing the modification of a qualified domestic relations order (hereinafter the "2015 QDRO") that Husband and his ex-wife, Erika L. Zehner ("Wife"), had entered into to effectuate the equitable distribution of Wife's Pennsylvania State Employees' Retirement System ("PSERS") pension.  We affirm.

Husband and Wife married in July 1991.  They separated in January 2011, shortly after which Wife filed a Divorce Complaint.  Eventually, on July 29, 2014, the parties executed a Consent Order of Court for Equitable Distribution (hereinafter the "Consent Order").

The Consent Order sets forth the overall scheme of distribution at Paragraph 2; providing, in relevant part, that "Husband shall receive 55% of the non-retirement assets and Wife shall receive 45% of the non-retirement

assets. The parties shall *equally divide the marital portion*[1] of their respective retirement assets." Consent Order, 7/29/14, ¶ 2 (emphasis and footnote added). Concerning retirement assets, the Consent Order provides that Husband shall retain "50% of the marital portion of" his retirement plan, and 100% of the non-marital portion of his plan. *Id.* ¶ 3(g). Likewise, the Consent Order provides that Wife shall retain "50% of the marital portion of" her PSERS pension, and *100% of the non-marital portion of her pension*. *Id.* ¶ 4(b). The Consent Order provides that "Husband shall receive 50% of the *marital portion* of Wife's PSERS pension … to be divided by [QDRO] prepared by Wife's counsel." *Id.* ¶ 3(h) (emphasis added). Notably to this appeal, the Consent Order provides that the coverture fraction pertaining to Wife's pension (hereinafter "Wife's coverture fraction") "shall be determined as follows: the numerator shall be the Date of Marriage through the Date of Separation; the denominator shall equal the amount of [Wife's] service, through the date of separation." *Id.* ¶ 4(b)(3).

On January 8, 2015, the trial court entered the 2015 QDRO, which effectuated the equitable distribution of Wife's pension, employing Wife's coverture fraction contained in the Consent Order. Importantly, the application of Wife's coverture fraction resulted in Husband receiving 50% of the marital portion of Wife's pension, *as well as* 50% of Wife's *non-marital*

---

[1] The Consent Order does not define the terms "marital property" or "marital portion."

pension monies.[2]  Concerning the equitable distribution of Husband's 401-k

retirement plan, Wife received 50% of the marital portion of this asset; she

did not receive any non-marital portion.  The trial court then entered a Divorce

Decree on February 13, 2015.

Approximately two years later, on February 23, 2017, Wife filed a

Petition for special relief (hereinafter "Wife's Petition").  Therein, she asserted

that the language in the Consent Order concerning the denominator of Wife's

coverture fraction was incorrect,[3] contrary to the parties' intent, and resulted

in an inequitable distribution of her non-marital monies.  Accordingly, Wife

_____

[2] However, the 2015 QDRO also provides that "[f]ifty percent (50%) of the *marital property component* of [Wife's] retirement benefit is to be allocated to [Husband] for the purpose of equitable distribution of this marital asset." 2015 QDRO Stipulation and Agreement, 1/8/15, ¶ 6(c) (emphasis added).

[3] The language of Wife's coverture fraction concerning the denominator (*i.e.*, "the amount of [Wife's] service, *through the date of separation*[,]" Consent Order, 7/29/14, ¶ 4(b)(3) (emphasis added)) differs from the statutory language concerning this component of the definition of "marital property," found in the Divorce Code.  **See** 23 Pa.C.S.A. § 3501*.*  Subsection 3501(c), governing equitable distribution of defined benefit retirement plans (such as Wife's pension), provides, in relevant part, as follows:

> *The denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit* and the numerator shall be the number of such months during which the parties were married and not finally separated.

**Id.** § 3501(c)(1) (emphasis added); **see also Hayward v. Hayward**, 808 A.2d 232, 237 (Pa. Super. 2002) (stating that "[a] coverture fraction is calculated by determining the ratio of the length of marriage to the number of years of employment.  The numerator of the fraction is the marital period of the employee-spouse's participation in the pension plan; the fraction denominator is the total period of time during which the employee-spouse accrued benefits." (citation and emphasis omitted)).

asked the trial court to schedule conciliation and enter an amended QDRO containing the correct coverture fraction. Husband objected in a Memorandum of Law ordered by the trial court. Therein, he argued that the court could not (a) modify the Consent Order and the 2015 QDRO years after they had become final; (b) vacate or open the parties' final Divorce Decree; or (c) alter the parties' negotiated agreement, as reflected in the Consent Order.

The trial court conducted a hearing on the matter on September 15, 2017 (hereinafter the "Hearing"). By an Order entered on October 6, 2017 (hereinafter "Petition for Relief Order"), the trial court granted Wife's Petition and directed the parties to execute an amended QDRO, employing the coverture fraction set forth in 23 Pa.C.S.A. § 3501(c)(1), *supra*.

The Petition for Relief Order provides, in relevant part, as follows:

Husband did not dispute that [Wife's] coverture fraction utilized provided him with 50% of the marital portion of Wife's pension and 50% of her post-separation (non-marital) pension. Husband contended that he was aware that [Wife's] coverture fraction awarded him a portion of Wife's non-marital pension and that any error made was unilateral. He further argued that th[e trial c]ourt could not now reopen the parties' [D]ivorce [D]ecree to modify the Consent Order or the [2015] QDRO.

[Following the H]earing …[,] [and u]pon review of the record, including the evidence and testimony introduced at the Hearing, and the law, the [trial c]ourt believes Wife's Petition should be granted. Among other reasons, the following language in the Consent Order and [the 2015] QDRO[,] pertaining to [Wife's] coverture fraction to be used to determine the mar[it]al portion of Wife's PSERS pension[,] *constitutes a fatal defect apparent on the face of the record*, permitting this [c]ourt to open the parties' [D]ivorce [D]ecree and modify the foregoing [language]: "**through the date of separation**" (the "Defective

- 4 -

Language" [– *i.e.*, Wife's coverture fraction]). Consent Order at ¶ [4(b)(3) (emphasis added by the trial court)]; ***see also Hayward*** [], 808 A.2d [at] 235-36 … [(where incorrect coverture fraction language used in the parties' QDRO granted the wife 50% of the husband's *entire* pension (including both marital *and* non-marital monies), holding that this constituted a fatal defect on the face of the record under the circumstances, which gave the trial court the authority to grant husband's petition for special relief (that he had filed nearly 6 years after the QDRO) and modify the faulty QDRO language to comport with the parties' consent order, which granted wife only 50% of the marital portion of husband's pension)]; 23 Pa.C.S. § 3332.[4]

Simply put, the [trial c]ourt finds that the plain language of the Consent Order was designed to divide the "marital" portions of the parties' assets. The Defective Language utilized to determine [Wife's] coverture fraction applicable to Wife's pension is not consistent with any reasonable attempt to calculate a portion of property meeting any reasonable definition of "marital." Use of the Defective Language clearly results in an award of more than that portion of Wife's pension earned during the parties' marriage. Husband acknowledges as much, and such language is clearly not supported by the law. ***See*** 23 Pa.C.S. § 3501; ***see***

_____

[4] Section 3332 of the Divorce Code provides, in relevant part, that

[a] motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter. … A motion to vacate a decree or strike a judgment alleged to be void because of … *a fatal defect apparent upon the face of the record* must be made within five years after entry of the final decree.

23 Pa.C.S.A. § 3332 (emphasis added); ***see also*** 42 Pa.C.S.A. § 5505 (providing that generally, "a court … may modify or rescind any order within 30 days after its entry, … if no appeal from such order has been taken or allowed."). In the instant case, Wife filed Wife's Petition within five years of the February 13, 2015 Divorce Decree.

*also Hayward*, 808 A.2d at 237.[5]

The above conclusion finds further support from evidence elicited during the Hearing. Both parties proposed that the marital portions of their respective retirement accounts be equally divided in their first and second Marital Asset and Liability Statements ([collectively, the] "MAL").[6] This issue was agreed upon from the beginning and[,] therefore[,] never negotiated or discussed again. At no time did Husband propose that he receive a portion of Wife's non-marital pension, or that Wife's retirement asset be treated differently than his own. Husband's own testimony – assuming it is credible – reveals that even he is aware that the Defective Language, if permitted to stand, grants him a non-marital portion of Wife's PSERS pension. Husband testified that marital assets are assets accumulated during the marriage. He acknowledged that marital assets do not include assets acquired post[-]separation. He further acknowledged that the proposed distribution orders and Consent Order recited, over and over, that he was entitled to 50% of the marital portion of Wife's pension. Finally, he acknowledged that the Consent Order did not define marital property. Despite this understanding, Husband testified that the marital portion of Wife's pension was to be defined by use of the Defective Language. He further testified that he researched[,] on PSERS's website[,] the coverture fraction applicable to Wife's PSERS pension set forth in the proposed

---

[5] The trial court is citing to the following portion of the *Hayward* decision:

Moreover, the [] QDRO, by granting [w]ife half of [h]usband's entire military pension, contravenes Pennsylvania law. "The amount of pension funds accrued during marriage is marital property and subject to equitable distribution." *Endy* [*v. Endy*], 603 A.2d [641,] 643 [(Pa. Super. 1992)]. Correspondingly, pension benefits accruing prior to [the] date of marriage and after [the] date of final separation are not subject to equitable distribution. *See id.* at 644. Accordingly, by distributing portions of [h]usband's pension that accrued prior to the marriage and after separation, the [] QDRO does not only violate the terms of the consent order but also violates Pennsylvania law.

*Hayward*, 808 A.2d at 237.

[6] The trial court explained that the MAL "valued Wife's retirement 'less Wife's post-separation contributions.'" Trial Court Opinion, 1/9/18, at 3 n.1.

[c]onsent [o]rder; and as a result of his independent research, he understood that the proposed order awarded him a non-marital share of Wife's pension.

The plain language of the Consent Order[,] as well as the other evidence introduced at the Hearing, including Husband's testimony, thus reveal that a fatal defect appears on the face of the record here: the parties were to equally divide **the marital portions** of their retirement assets, and the Defective Language prevents said distribution. Accordingly, the [c]ourt grants Wife's [P]etition. The parties are directed to execute an amended QDRO which utilizes a coverture fraction consistent with 23 Pa.C.S. § 3501.

Petition for Relief Order, 10/6/17, at 3-5 (bold emphasis in original, italicized emphasis and footnotes added). Importantly to this appeal, the trial court did not vacate the parties' Divorce Decree in the Petition for Relief Order, or thereafter.

Husband timely filed a Notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. The trial court then issued a Rule 1925(a) Opinion.

Husband now presents the following issues for our review:

1. Did the trial court err by ordering the modification of an [O]rder 31 months after it had become final by operation of 42 Pa.C.S. § 5505 and 23 Pa.C.S. § 3332?

2. Did the trial court err by ordering [that] an amended QDRO be entered when the trial court failed to vacate the [D]ivorce [D]ecree?

3. Did the trial court err by ordering [that] an amended QDRO be entered when the trial court had lost jurisdiction to enter a modified QDRO?

4. Did the trial court err by finding a fatal defect appeared on the face of the record[,] pursuant to 23 Pa.C.S. § 3332[,] when the pertinent language of the two relevant operative [O]rders was identical?

5. Did the trial court's [O]rder to execute an amended QDRO[,] that differed in a single respect from the parties' negotiated settlement[,] violate Husband's due process rights under the United States and Pennsylvania [C]onstitutions?

6. Did the trial court err by relying on evidence elicited at [the] [H]earing[,] after the subject [O]rders had been entered[,] to determine that a fatal defect appeared on the face of the record?

Brief for Husband at 3-4 (some capitalization omitted).

Like Husband, we address his first four issues simultaneously, as they are related. The main thrust of Husband's argument is that the trial court lacked jurisdiction to address Wife's Petition, where modification of the 2015 QDRO was not authorized under 23 Pa.C.S.A. § 3332 or 42 Pa.C.S.A. § 5505. *See* Brief for Husband at 7-11.

We are guided by the closely-related **Hayward** decision, wherein the panel observed that,

[t]ypically, a court may modify an order within thirty days after its entry, according to [42 Pa.C.S.A. § 5505] ….

* * *

In **Stockton v. Stockton**, 698 A.2d 1334, 1337 (Pa. Super. 1997), we concluded [that] section 5505 applies to petitions to modify QDROs. We stated:

The lower court's authority under 42 Pa.C.S.A. § 5505 to modify or rescind an order is almost entirely discretionary; this power may be exercised *sua sponte*, or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal.

Although 42 Pa.C.S.A. § 5505 gives the trial court broad discretion, the trial court may consider a motion for

- 8 -

> reconsideration only if the motion is filed within thirty days of the entry of the disputed order. After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, *a fatal defect apparent on the face of the record or some other evidence of extraordinary cause* justifying intervention by the court.[7]
>
> ***Id.*** (emphasis added) (citations and quotation marks omitted). Absent an allegation of extrinsic fraud or other extraordinary cause, the trial court does not have jurisdiction to grant a petition to modify a QDRO if such petition was filed more than thirty days from the date the QDRO was entered. ***Id.*** at 1338.

***Hayward***, 808 A.2d at 235 (footnote added); ***see also Melton v. Melton***, 831 A.2d 646, 651 (Pa. Super. 2003). "[E]xtraordinary circumstances exist where there is a fatal defect apparent on the face of the record." ***Hayward***, 808 A.2d at 236 (quoting ***Stockton***, 698 A.2d at 1337).

Significantly, the ***Hayward*** Court went on to hold that

> the trial court erred by failing to modify the 1995 QDRO to comport with the consent order entered into by the parties in 1989. Although [h]usband filed his motion for special relief almost six years after entry of the 1995 QDRO [(and fourteen years after the parties' divorce decree)[8]], extraordinary circumstances exist since there is a fatal defect on the face of the record, *i.e.*, the 1995 QDRO utilizes an improper coverture fraction that has the effect of granting [w]ife 50% of [h]usband's <u>entire</u> military pension rather than 50% of the <u>marital portion</u> of his pension[,] as agreed to by the parties in the 1989 consent order[,] and as provided by Pennsylvania law.

_____

[7] Notably, the italicized language employs the language of 23 Pa.C.S.A. § 3332, though not identified as such in ***Hayward***.

[8] The ***Hayward*** Court did not open or vacate the divorce decree.

- 9 -

*Hayward*, 808 A.2d at 236 (footnote added, emphasis in original). Accordingly, the panel reversed the trial court's order denying husband's motion for special relief, and "remand[ed] for proper calculation of the marital portion of [h]usband's pension benefits to which [w]ife is entitled under the consent order." *Id.* at 237.

Husband herein argues that the trial court lacked jurisdiction to grant the relief requested in Wife's Petition, since the court failed to vacate the Divorce Decree, and had no authority to open the Decree. Brief for Husband at 10; *see also id.* at 7 (asserting that "the [t]rial [c]ourt failed to abide by the constraints of Section 3332 when it failed to vacate the Decree (its only available remedy)[.]"). According to Husband, "Wife's right to the portion of her PSERS retirement that was awarded to Husband[,] by operation of the Consent Order and [2015] QDRO[,] was extinguished with the entry of the Decree, so vacating the Decree was necessary to consider that claim." *Id.* at 10 (citing *Justice v. Justice*, 612 A.2d 1354, 1357 (Pa. Super. 1992) (stating that "a divorce decree [that has become final] must be either vacated or opened in order for the trial court to consider [a party's] economic claims" arising from the marriage)).

Husband further contends that, contrary to the trial court's determination,

> *Hayward*[,] is inapposite to the instant case because the key underlying fact (*i.e.*[,] the source of the definition of "marital portion") is factually distinct from the instant case. In the instant case, the parties did not borrow any definition of "marital portion," be it from case law or statute, but defined that term for

- 10 -

themselves in the Consent Order and again in the [2015] QDRO. … The [2015] QDRO entered utilized precisely the definition of the marital portion to which the parties had agreed when they executed the Consent Order. … Therefore, unlike in **Hayward**, the two relevant [O]rders [in this case] are consistent with one another[,] so there is no fatal defect on the face of the record owing to "mistakes made by the court or its officers." **Hayward**, 808 A.2d at 235.

Brief for Husband at 11.

We conclude that **Hayward** is on-point and controls our disposition. First, the **Hayward** Court did not set forth or apply the divorce decree-specific provisions of section 3332; rather, it applied section 5505 to address a belated attempt to modify a QDRO. **See Hayward**, 808 A.2d at 235-36. The **Hayward** Court did not rule that it was necessary for the parties' divorce decree to be vacated. Indeed, the panel held that the trial court was authorized to modify the parties' flawed QDRO language (which constituted a fatal defect on the face of the record rising to the level of an extraordinary circumstance) to comport with the parties' earlier consent order, even where the husband had filed his petition requesting this special relief *after* the expiration of the five-year time limit set forth in section 3332. **See id.** at 235-36, 237. Thus, in the instant case, Husband's attempt to invoke section 3332 as a bar is misplaced.[9] Additionally, **Hayward** made clear that a QDRO that has the effect of granting one spouse non-marital pension monies of the other spouse "contravenes Pennsylvania law." **Id.** at 237 (stating that "pension

_____

[9] Nevertheless, it bears repeating that Wife filed Wife's Petition well prior to the expiration of section 3332's five-year time limit.

benefits accruing prior to date of marriage and after date of final separation are not subject to equitable distribution.").

Here, like the circumstances in **Hayward**, we conclude that the 2015 QDRO's use of an improper coverture fraction, which failed to comport with the clear and unambiguous language of the Consent Order concerning the division of marital retirement property,[10] constituted a fatal defect on the face of the record, which rose to the level of an extraordinary circumstance.[11] Therefore, pursuant to **Hayward**, the trial court had the authority to correct this defect and order the filing of an amended QDRO.[12]  **See id.** at 235-37; **cf. Stockton**, 698 A.2d at 1338 (interpreting sections 3332 and 5505 as

---

[10] We note that the record belies Husband's representation that the parties "defined th[e] term ['marital portion'] for themselves in the Consent Order and again in the [2015] QDRO."  Brief for Husband at 11.  Neither of these documents define this term.

[11] Specifically, the division of Wife's pension effectuated by the 2015 QDRO did not correspond with the Consent Order that the parties were to equally divide only the *marital portions* of their retirement assets.  **See** Petition for Relief Order, 10/6/17, at 5; **see also** 23 Pa.C.S.A. § 3102(a)(6) (identifying the Commonwealth's policy to "[e]ffectuate economic justice between parties who are divorced or separated and … insure a fair and just determination and settlement of their property rights.").  Essentially, the trial court erred in accepting the 2015 QDRO.

[12] In so holding, we acknowledge that the trial court, in its Petition for Relief Order, stated that the "language in the Consent Order and [2015] QDRO pertaining to [Wife's] coverture fraction … constitutes a fatal defect apparent on the face of the record, permitting this [c]ourt to *open the parties'* [D]ivorce [D]ecree …."  Petition for Relief Order, 10/6/17, at 3-4 (emphasis added). This determination is in error.  Nevertheless, it is well established that this Court may affirm a trial court's ruling on any basis.  **See Blumenstock v. Gibson**, 811 A.2d 1029, 1033 (Pa. Super. 2002) (stating that an appellate court is not limited by a trial court's rationale and may affirm on any basis).

applied to a husband's attempt to modify a QDRO and holding that his allegations of his counsel's failure to communicate adequately, and dissatisfaction with counsel, were insufficient to prove fraud or any other "extraordinary cause" to allow the trial court to modify the QDRO). Accordingly, none of Husband's first four issues entitle him to relief.

In Husband's final two issues, which we will address together, he contends that the trial court

> (1) violated his right to due process when it ordered the execution of an amended QDRO without first vacating the final Divorce Decree and giving Husband the opportunity to renegotiate equitable distribution; and

> (2) improperly relied on evidence elicited at the Hearing, which took place more than two years after the Consent Order and 2015 QDRO became final, in determining that a fatal defect existed *on the face of the record*.

Brief for Husband at 11-13, 16-19.

The trial court correctly found in its Rule 1925(a) Opinion that Husband has waived these issues for failing to raise them before the trial court. **See** Trial Court Opinion, 1/9/18, at 3-6 (citing*, inter alia*, Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal)). Furthermore, the fact that Husband raised these claims in his Rule 1925(b) Concise Statement does not preserve them on appeal. **See Beemac Trucking, LLC v. CNG Concepts, LLC**, 134 A.3d 1055, 1058 (Pa. Super. 2016) (stating that a party cannot rectify the failure to preserve an issue by raising it, for the first time, in a concise statement) (citation omitted)).

Nevertheless, even if these two issues were not waived, we would determine that they do not entitle Husband to relief for the following reasons set forth in the trial court's Opinion:

[(1) Husband's claim that he was deprived of due process] is predicated on Husband's contention that he would not have executed the Consent Order without the Defective Language contained therein. Said contention is not credible. The [trial c]ourt had the opportunity to observe and hear Husband's testimony, [*i.e.*, at the Hearing,] and it is clear to the [c]ourt that both Husband and Wife believed that they – in executing the Consent Order – would be equally dividing only that portion of Wife's pension which was earned from the time of marriage to the parties' separation. Husband's testimony that he knew that he would be receiving more of Wife's pension – and that he relied upon the same – at the time he executed the Consent Order[,] was not credible. Accordingly, the credible evidence does not establish that Husband would have sought to renegotiate (or further negotiate) the parties' Consent Order if the Defective Language therein was actually absent. Husband's claim to the contrary, therefore[,] lacks merit.

* * *

[(2) Concerning Husband's claim that the trial court improperly relied on evidence adduced at the Hearing,] other courts tasked with determining whether a fatal defect exists on the record have held hearings. ***See***[,] ***e.g.***, ***Hayward*** [], 808 A.2d [at] 234 … ([stating that "t]he trial court held a hearing …."). Moreover, [the trial c]ourt [in the instant case] concluded that the Consent Order itself revealed the fatal defect at issue[,] and that said conclusion found further support from, rather than being based on, the evidence elicited at the [H]earing. ***See*** [Petition for Relief] Order[, 10/6/17,] at 3-5 (finding the existence of a fatal defect on the [face of the] record and then noting that such a conclusion was "further support[ed]" by evidence from the [H]earing)[, and] 5 ([considering "t]he plain language of the Consent Order **as well as** the other evidence introduced at the [H]earing …. (emphasis added)). Husband's final claim of error, therefore, lacks merit despite its waiver.

Trial Court Opinion, 1/9/18, at 4-6.

- 14 -

Therefore, we conclude that the trial court did not err or abuse its discretion in granting Wife's Petition, and directing the parties to execute an amended QDRO that utilizes a correct coverture fraction consistent with 23 Pa.C.S.A. § 3501(c)(1). **See Hayward**, 808 A.2d at 237.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/31/2018