J-S03025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES A. LEMMO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CINDY D. LEMMO | : | |
| | : | |
| | | No. 949 WDA 2019 |

Appeal from the Order Entered May 13, 2019
In the Court of Common Pleas of Clearfield County Civil Division at
No(s): 07-97-CD

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY McCAFFERY, J.:            **FILED FEBRUARY 13, 2020**

James A. Lemmo (Husband) appeals from the order entered in the

Clearfield County Court of Common Pleas, dismissing his petition for special

relief, which sought modification of a Qualified Domestic Relations Order

(QDRO).[1] Husband contends the trial court abused its discretion when it found

it lacked jurisdiction to amend the QDRO. For the reasons below, we affirm.

Husband and Cindy D. Lemmo (Wife) were married on April 16, 1988,

and separated on July 28, 2006. A divorce decree was entered on May 11,

2009. A Divorce Master considered the equitable division of the parties'

_____

* Retired Senior Judge assigned to the Superior Court.

[1] "A QDRO is an order which creates or recognizes the rights of an alternate
payee to receive all or a portion of the benefits payable to a participant under
[a pension] plan." **Getty v. Getty**, 2019 WL 5157011, 208 EDA 2019, 4 n.4
(Pa. Super. Oct. 15, 2019) (citation omitted).

marital property, including both Husband's and Wife's State Employees' Retirement System (SERS) benefits, and filed a report and recommendation on May 20, 2010. Thereafter, on June 10, 2010, the trial court entered an order based on the Master's recommendation. Relevant to this appeal, the Order provided, in pertinent part:

> 4. Based on [the] previous economic analysis which is more fully defined on the Schedule C (Recapitulation) attached hereto, the Master recommends the following distribution of marital assets/non-marital asses/liabilities:
>
> * * *
>
> B. Wife and Husband's SERS retirements as well as Husband's Deferred Compensation Plan shall be distributed 50 / 50 equally between the parties pursuant to Qualified Domestic Relations Orders [QDROs] as stipulated by the parties. Wife's counsel will prepare the [QDRO] applicable to her retirement while Husband's counsel will prepare the [QDRO] applicable to his retirement and the Deferred Compensation Plan. Said [QDROs] to be completed within sixty (60) days from the date of this Order.

Order, 6/10/10, at ¶ 4.B.

Subsequently, on October 4, 2010, the parties stipulated to a QDRO drafted by Wife, which contained the following language:

> 7. (a) The marital property component of [Wife's] retirement benefit equals the Coverture Fraction[2] multiplied by [Wife's] retirement benefit on the effective date of the parties [sic] separation, July 28, 2006.
>
> (b) The Coverture Fraction is a fraction with a value less than or equal to one. The numerator is the amount of [Wife's] service, as defined by SERS, for the period of time from April 16, 1988 (date

---

[2] A "coverture fraction" is the method used to "calculate the marital portion of a pension plan[.]" **Conner v. Conner**, 217 A.3d 301, 317 n.7 (Pa. Super. 2019).

of marriage), to July 28, 2006 (date of separation). The denominator is the total amount of [Wife's] service, as defined by SERS, on the effective date of [Wife's] retirement.

(c) The parties agree that 50% of the marital property component of [Wife's] retirement benefit is to be allocated to [Husband] as his equitable distribution portion of this marital asset.

Stipulation for Entry of Domestic Relations Order, 10/4/10, at ¶ 7.

Thereafter, the parties signed a similar stipulation regarding Husband's retirement account. The QDRO drafted by Husband stated, in relevant part:

7. The marital property component of [Husband's] retirement benefit equals the Coverture Fraction multiplied by [Husband's] retirement benefit on the effective date of [Husband's] retirement calculated using the Retirement Code in effect on July 28, 2006, the date of the parties' separation, and [Husband's] final average salary as of the effective date of retirement.

The Coverture Fraction is a fraction with a value less than or equal to one. The numerator is the amount of [Husband's] service, as defined by SERS, for the period of time from April 16, 1988, to July 28, 2006. The denominator is the total amount of [Husband's] service, as defined by SERS, on the effective date of [Husband's] retirement.

Fifty percent (50%) of the marital property component of [Husband's] retirement benefit is to be allocated to [Wife] as the equitable distribution portion of this marital asset.

Amended Stipulation & Agreement for Entry of Domestic Relations Order, 11/4/10, at ¶ 7.

Husband retired in March of 2015, at which time he withdrew a lump sum of his benefits, and has been receiving additional monthly payments since that time. Wife has been receiving monthly payments since she retired in September of 2018.

On February 22, 2019, Husband filed a petition for special relief, seeking modification of his November 4, 2010, QDRO. Specifically, Husband asserted that his QDRO, which utilized the "date of retirement as the valuation date," resulted in Wife receiving an overpayment from both his lump sum distribution and monthly benefits. Husband's Petition for Special Relief, 2/22/19, at ¶ 26. Following argument, on May 13, 2019, the trial court entered an order dismissing Husband's petition for lack of jurisdiction. In particular, the court found the language of the QDRO at issue limited the court's ability to modify the order, and there was "no fatal defect on the face of the record to merit" the court's intervention. Trial Ct. Op., 8/9/19, at 4.

Husband filed this timely appeal, and complied with the trial court's order directing him to submit a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

On appeal, Husband argues the trial court abused its discretion when it determined it lacked jurisdiction to amend the QDRO because the order contained a fatal defect, namely, it allowed Wife to receive 50% of the non-marital portion of his retirement benefits.[3] Husband's Brief at 16-17. He also contends the QDRO is unlawful because it distributes both marital and non-marital property. *Id.* at 13. We conclude no relief is warranted.[4]

---

[3] We have reordered Husband's claims for purposes of disposition.

[4] Husband also raises a third argument—that, contrary to the trial court's determination, the jurisdictional language in the QDRO does not limit the court's authority to modify the QDRO under the circumstances present here.

"We review a trial court's decision to grant [or deny] special relief in divorce actions under an abuse of discretion standard[.]" ***Conway v. Conway***, 209 A.3d 367, 371 (Pa. Super. 2019).

First, Husband insists the trial court had jurisdiction to modify the QDRO because the order contained a fatal defect which resulted in Wife receiving Husband's non-marital retirement benefits. Husband's Brief at 14. Although he recognizes a trial court generally loses jurisdiction to modify its orders after 30 days,[5] Husband argues a trial court retains the authority to modify an order when there is "a fatal defect apparent on the face of the record or some other evidence of extraordinary cause justifying intervention by the court." ***Id.*** (quotation omitted). Relying on ***Hayward v. Hayward***, 808 A.2d 232 (Pa. Super. 2002), and ***Zehner v. Zehner***, 195 A.3d 574 (Pa. Super. 2018), Husband contends the language of his QDRO contains a fatal defect because it "fails to comport with the clear and unambiguous language of the Master's Recommendation and Order, and the stipulation of the parties incorporated

_____

Husband's Brief at 20. This claim relates to an alternative holding of the trial court, which we need not address based on our disposition.

[5] ***See*** 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

- 5 -

therein, that the **marital portions** of each party's retirement would be divided 50/50." *Id.* at 17 (emphasis added).

In *Hayward*, this Court held the trial court had jurisdiction to modify a QDRO more than six years after the order was entered because it determined the coverture fraction utilized was incorrect. In that case, the consent order entered by the trial court specified that the wife was to prepare two QDRO's, relating to the husband's military and civil service pensions, "segregating to [the wife] a share equal to 50% of the **marital portion** of each pension[.]" *Hayward*, 808 A.2d at 234 (citation omitted). However, the QDRO prepared by the wife, and entered by the court, included a coverture fraction with both a numerator and denominator of 240, so that the wife was awarded 50% of the husband's entire pension, which included both marital and non-marital property. *Id.* at 236. This Court concluded the coverture fraction of "one" was flawed in that it failed to "eliminate from distribution those pension benefits accrued prior to marriage and after separation." *Id.* at 237. Accordingly, we vacated the trial court order denying the husband's motion to modify the QDRO and remanded for further proceedings. *Id.* at 238.

Similarly, in *Zehner*, this Court determined that the trial court had jurisdiction to modify a QDRO based upon a fatal defect on the face of the record, namely, the "use of an improper coverture fraction, which failed to comport with the clear and unambiguous language of the Consent Order concerning the division of marital retirement property[.]" *Zehner*, 195 A.3d at 581. The consent order at issue specifically stated "[t]he parties shall

**equally divide the marital portion** of their respective retirement assets."

*Id.* at 575-76 (footnote omitted).  However, the coverture fraction set forth

in both the consent order and subsequent QDRO stated "the denominator shall

equal the amount of [the wife's] service, through the date of separation." ***Id.***

at 576 (citation omitted).  The trial court found, and the husband conceded,

"the application of [this] coverture fraction resulted in [the husband] receiving

50% of the marital portion of [the wife's] pension, **as well as** 50% of [the

wife's] **non-marital** pension monies." ***Id.***

In the present case, the trial court found the facts in ***Hayward*** and

***Zehner*** distinguishable from those presented herein.  The court opined:

> Here, the [June 10, 2010, Order entered upon the Master's
> Recommendation] did not contain clear and unambiguous
> language that differed from the language or computing method
> used in the QDRO.  Paragraph 4(B) of the Master's
> Recommendation and Order provided that "Husband's and Wife's
> SERS retirement accounts, as well as Husband's deferred
> compensation plan, be distributed equally 50% / 50% to each
> party pursuant to [QDROs] as stipulated to by the parties."  There
> is no language that expressly provides a distinction between
> marital and non-marital assets.  Both Wife's and Husband's
> counsel prepared their respective QDRO submission to SERS and
> were given the opportunity to review the stipulated agreement to
> ensure it was the appropriate recitation of their agreement.  Unlike
> ***Hayward*** and ***Zehner***, there was no improper coverture fraction,
> or faulty language.  Therefore, there was no fatal defect on the
> face of the record to merit the Court intervening and modifying
> the QDROs.

Trial Ct.Op. at 4.

We agree with the court's reasoning.  As noted above, the trial court's

June 10, 2010, order directed that the parties' retirement plans be distributed

- 7 -

equally pursuant to QDRO's prepared by the parties. There is no language distinguishing the marital versus non-marital portions of the plans. *See* Order, 6/10/10, at ¶ 4.B. Furthermore, both Husband and Wife's QDRO's utilize the same coverture fraction—a numerator equal to the time period from the parties' marriage to the date of separation, and a denominator equal to the total period of the employee spouse's service on his/her retirement date. *See* Stipulation for the Entry of a Domestic Relations Order, 10/4/10, at ¶ 7; Amended Stipulation and Agreement for the Entry of Domestic Relations Order, 11/4/10, at ¶ 7. The only difference in the QDRO's at issue is Wife's order specifies the "marital property component" of her benefit is the coverture fraction multiplied by her benefit "on the effective date of the parties separation[,]" while Husband's order directs the coverture fraction be multiplied by his benefit "on the effective date of [his] retirement]." *Id.* Accordingly, unlike in *Hayward* and *Zehner*, Husband's QDRO at issue here did not utilize a facially improper coverture fraction, or include language that differed from the court's order.

Nonetheless, Husband also argues that while the June 10, 2010, order did not define marital property, it did "distinguish between marital and non-marital property, . . . as it relates to both parties' SERS retirement accounts, because the master accepted the stipulated values of each pension, [as reflected in a Schedule A attached to the order,] which reflected the marital portions." Husband's Brief at 18. However, nothing in the Schedule A or June 10, 2010, Order limits the value of the parties' respective retirement plans to

the amounts listed on the Schedule A. Moreover, as we discussed ***supra***, Section 3501(c)(1) states the "marital portion" of a retirement plan distributed through deferred distribution includes all postseparation "enhancements," with the exception of "enhancements arising from" the employee's own monetary contributions. 23 Pa.C.S. § 3501(c)(1). Therefore, we agree with the trial court that Husband failed to demonstrate his QDRO contained a fatal defect or there was other evidence of extraordinary cause to justify the court's modification of the order more than eight years after it was entered.

Nevertheless, Husband also claims the trial court had the authority to modify his QDRO because the language in the order, which distributed both non-marital and marital portions of his retirement benefits, "contravened Pennsylvania law[.]" Husband's Brief at 13. Relying upon ***Berrington v. Berrington***, 598 A.2d 31 (Pa. Super. 1991), *aff'd*, 633 A.2d 589 (Pa. 1993), Husband insists that only retirement benefits available on the date of the parties' separation are marital property subject to equitable distribution. Id. at 12-13.

Preliminarily, we note this Court's decision in ***Berrington*** was affirmed by the Pennsylvania Supreme Court. ***Berrington***, 633 A.2d 589. In that opinion, the Supreme Court held,

> [I]n a deferred distribution of a defined benefit pension, **the spouse not participating may not be awarded any portion of the participant-spouse's retirement benefits which are based on post-separation salary increases**, incentive awards or years of service. Any retirement benefits awarded to the non-participant spouse must be based **only on the participant-spouse's salary at the date of separation**.

- 9 -

*Id.* at 594 (emphasis added). However, in ***Smith v. Smith***, 938 A.2d 246, (Pa. 2007), the Court recognized that the holding in ***Berrington*** "no longer controls" in light of the legislature's 2004 amendment to the Divorce Code. *Id.* at 258. Indeed, Section 3501(c)(1) of the Divorce Code now provides:

> In the case of the **marital portion** of a defined benefit retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit and the numerator shall be the number of such months during which the parties were married and not finally separated. **The benefit to which the coverture fraction is applied shall include all post[-]separation enhancements except for enhancements arising from post[-]separation monetary contributions made by the employee spouse,** including the gain or loss on such contributions.

23 Pa.C.S. § 3501(c)(1) (emphasis added).

Thus, as the Supreme Court explained in ***Smith***, "[i]n the simplest of cases, the determination of the marital portion of a defined benefit pension will entail a straightforward application of the coverture fraction to the **final total value of the pension**, even though the value has increased due to years of post[-]separation employment." ***Smith***, 938 A.2d at 259 (emphasis added). The only increases not included are "post[-]separation monetary contributions made by the employee spouse." *Id.*, *citing* 23 Pa.C.S. § 3501(c).

Here, Husband contends his QDRO violates Pennsylvania law because "it used Husband's retirement date rather than the date of separation to

determine the valuation of the marital interest." Husband's Brief at 6. *See* Amended Stipulation & Agreement for Entry of Domestic Relations Order, 11/4/10, at ¶ 7. However, pursuant to Section 3501(c)(1), as amended in 2004, the marital property portion of his pension **includes** any post-separation increases in value.[6] Accordingly, Husband's claim that his QDRO violates Pennsylvania law is meritless.

Because we agree with the determination of the trial court it lacked jurisdiction to modify Husband's QDRO, we affirm the order dismissing Husband's petition for special relief.[7]

Order affirmed.

---

[6] We note Husband does not assert that he made any monetary contributions to his pension after the parties separated, which would be excludable from the final value of the pension pursuant to Section 3501(c)(1). **Smith**, 938 A.2d at 259.

[7] As noted **supra**, the trial court alternatively found the language of the QDRO itself further limited the court's jurisdiction to modify or amend its terms. **See** Trial Ct. Op. at 4. Because we conclude Husband failed to demonstrate the court had any authority to modify the order under the relevant statutory or case law, we need not address whether the terms of the QDRO further limited this authority.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/13/2020