J-S13017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GEORGE W. REIS, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUSAN M. REIS | : | |
| | : | |
| Appellant | : | No. 1879 MDA 2019 |

Appeal from the Order Entered October 28, 2019
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2011-21022

BEFORE:   STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: APRIL 30, 2020**

Appellant, Susan M. Reis ("Wife"), appeals from the October 28, 2019 Order that denied her Petition to Enforce Divorce Decree, which requested that the court direct the entry of an amended Qualified Domestic Relations Order ("QDRO")[1] almost three years after the entry of the original QDRO. Upon review, we agree with the trial court's decision that it lacked jurisdiction to amend the QDRO and, thus, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] "A QDRO is an order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [a retirement benefits plan]. To be 'qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." **_Smith v. Smith_**, 938 A.2d 246, 248 (Pa. 2007) (citation and internal quotation mark omitted).

A detailed recitation of the procedural and factual history is unnecessary to our disposition. Briefly, Wife and Appellee, George W. Reis, III ("Husband"), were married on April 8, 1995 and separated on November 19, 2011. Relevant to this appeal, Husband was a member of the Sheet Metal Worker's Union Local 19 ("Union") for thirty-five years, sixteen of those years while married to Wife. Husband participated in the Union retirement plan, which was comprised of a Sheet Metal Workers Annuity ("Annuity"), and a Sheet Metal Workers Pension Fund ("Pension"). Pursuant to the Union's "Rule of 85," when a Union member's age and years of service equals or exceeds the sum of 85, that individual is entitled to receive an unreduced early retirement benefit.

Husband filed a Complaint in Divorce on December 5, 2011. On February 23, 2016, after considering a Special Master's Report and Recommendations, and both parties' Exceptions, the trial court entered a Divorce Decree. The Decree, *inter alia*, awarded Wife 55% of the marital estate, 55% of the marital portion of the value Husband's Annuity and Pension, and $800 in alimony per month until Wife is 62 years old.

On June 20, 2016, the parties entered a Stipulation where Husband agreed to pay Wife an additional $60,000 above the court-ordered 55% from his Annuity in exchange for Wife waiving her right to collect alimony. Stipulation, filed 6/20/16, at ¶C(1)-(2). Also, both parties agreed to execute a "revised" Annuity QDRO and Pension QDRO "simultaneously with their execution of this Stipulation" and agreed that "[a]ll other provisions of the

Special Master's Report of December 9, 2015, and the Order and Decree of February 23, 2016, shall remain in full force and effect." ***Id.*** at (C)(1), (5).

On June 22, 2016, Wife filed motions requesting court approval of the Annuity QDRO and the Pension QDRO, the latter of which is at issue in the instant appeal. On the same day, the trial court approved and entered both on the record.

The Pension QDRO, states, in relevant part:

7. Amount of Alternate Payee's Benefit: This Order assigns to the Alternate Payee 55.0% times the marital share fraction of the Participant's vested accrued benefit, as of the earlier of the Alternate Payee's benefit commencement date or the date the Participant permanently ceases to accrue benefits under the [Union Pension]. The numerator of the marital share fraction is the number of months the Participant received credited service for the purpose of computing benefits under the [Union Pension] during the period of the marriage (April 8, 1995 through November 19, 2011), and the denominator of which shall be the Participant's total number of months counted as credited service for the purpose of computing benefits under the [Union Pension] for the period ending on the earlier of the Alternate Payee's benefit commencement date or the date the Participant permanently ceases to accrue benefits under the [Union Pension].

* * *

9. Actuarial Adjustments ("Separate Interest"): Any payments made to the Alternate Payee under this Order will be actuarially adjusted to take into account:

(a) the life expectancy of the Alternate Payee;

(b) the date on which the Alternate Payee commences receiving benefits if it is prior to the Participant's normal retirement age (as defined under the [Union Pension]);

(c) the form of benefit selected by the Alternate Payee, if applicable.

- 3 -

*  *  *

17. <u>Continued Jurisdiction</u>:  The Court shall retain jurisdiction with respect to this Order to the extent required to maintain the original intent of the parties as stipulated herein.

Pension QDRO, 6/22/16.8

In September 2018, Husband retired ten years early and qualified for an unreduced early retirement benefit from his Pension because he satisfied the Union "Rule of 85" eligibility requirements; Husband was 55 years old and a member of the Union for 35 years.

Prior to Husband's retirement, in August 2018, Wife received correspondence from the Union's Pension Department advising that her assigned monthly benefit was $1,044 as of Husband's original retirement date, September 2028, but that she would receive an actuarially reduced monthly benefit of $547, if she elected to receive payments immediately.  The correspondence further explained that the Union Pension QDRO does not call for awarding Wife a portion of any early retirement subsidy awarded to Husband.

On March 15, 2019, Wife filed a Petition to Enforce Divorce Decree.  In the Petition, Wife averred that, pursuant to the Divorce Decree, she was entitled to 55% of Husband's early retirement subsidy and requested that the trial court direct the entry of an Amended QDRO to allow her to share in Husband's early retirement subsidy.

On May 29, 2019, the trial court held a hearing on the Petition. Wife did not present any witnesses, but submitted various exhibits, including: the Special Master Report; Divorce Decree; June 20, 2016 Order and Stipulation regarding Wife's waiver of alimony in exchange for $60,000; the Union Pension QDRO; and the August 16, 2018 letter from the Pension Actuary to Wife.

Husband testified on his own behalf, and called numerous witnesses, including: Johnathan Cramer, the actuary who prepared the Union Pension QDRO; Elizabeth Schlax, Esq., co-counsel for the Pension Fund; Michael Reilly, the actuary who calculated Wife's benefits; Thomas Klingenberg, the Pension Fund Administrator.

In sum, Husband testified that Wife was aware of the "Rule of 85" and it was an available retirement plan option the entire time he was married to Wife. N.T. Hearing, 5/29/19, at 13.

Mr. Cramer testified that the parties jointly retained him to prepare the Pension QDRO, the "Rule of 85" was an option under Husband's retirement plan at the time he prepared the QDRO, neither party requested him to include language regarding Wife sharing in an early retirement supplement, and both parties, and their attorneys, had an opportunity to review the QDRO and make revisions. *Id.* at 16-17. Mr. Cramer explained that if Wife elected to receive her payments early, she would be receiving a lower monthly amount over a longer period, and "the actuarial value of the smaller benefit paid over a longer period is actuarially equivalent to a higher amount of monthly pension paid at

a later point." *Id.* at 18-19.  Mr. Cramer stated that Husband, who elected to receive his payments early, was not receiving an actuarial reduction because of the "Rule of 85." *Id.* at 19.   Finally, counsel pointed out that paragraph 7 of the QDRO awarded Wife 55% of the marital share fraction of the Participant's "vested accrued benefit" and asked Mr. Cramer to define that term.  Mr. Cramer responded that "the term vested accrued benefit . . . would include the participant's retirement benefits under the plan whether they retire at normal retirement age or whether they retire early and receive either a reduced or unreduced early retirement benefit." *Id.* at 23.

Attorney Schlax confirmed that the "Rule of 85" provision had been a Union retirement option since 1997, was in effect at the time of the parties' separation in 2011, and did not change after the parties divorced  in 2016. *Id.* at 29-30.   Attorney Schlax testified she advised the Pension Fund Administrator that paragraph 9 of the QDRO clearly states that the amount awarded to Wife will be actuarially adjusted to take into account the date on which Wife elects to take payments, and because the QDRO did not provide for Wife to receive a share of an early retirement subsidy, the Pension Fund could not assign or award such to Wife. *Id.* at 28, 31.  She further explained that if the parties had negotiated for Wife to receive a share of Husband's early retirement subsidy, they could have written that into the QDRO and the Pension Fund would comply with that term. *Id.* at 31.

Mr. Reilly testified that, hypothetically, if Wife elected to take early payments and the Pension Fund did not actuarially reduce them, Wife would

receive more than the 55% than the court awarded her. *Id.* at 40-41. Mr. Klingengerg testified that Husband is currently receiving Pension payments and Wife has not yet chosen whether to begin payments now or wait until Husband's original retirement date. *Id.* at 45-46.

On October 25, 2019, the trial court issued an Order and Opinion denying Wife's Petition to Enforce Divorce Decree because the court lacked jurisdiction to order the modification of the Pension QDRO more than 30 days after entry of the QDRO.

Wife timely appealed. Both Wife and the trial court complied with Pa.R.A.P. 1925.

Wife raises the following issue on appeal: "Whether the [trial court] erred when it did not permit amendment of the [QDRO] to comport with the Special Master's Recommendations and the Divorce Decree." Wife's Br. at 5.

This Court reviews a trial court's decision to grant or deny special relief in divorce actions for an abuse of discretion. *Conway v. Conway*, 209 A.3d 367, 371 (Pa. Super. 2019). "An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will." *Id.* (citation omitted). It is this Court's responsibility to ensure that the evidence supports the trial court's findings. *Prol v. Prol*, 935 A.2d 547, 551–52 (Pa. Super. 2007). "Although we will accept and indeed regard ourselves as bound by the [trial] court's appraisal

of a witness' credibility, we are not obliged to accept a finding that is not supported by the evidence." ***Id.*** (citation omitted).

In her sole issue, Wife avers that the trial court erred when it did not permit amendment of the Pension QDRO to comport with the Special Master's Recommendations and the Divorce Decree, which awarded her 55% of Husband's Pension. Wife's Br. at 10-11. In her Brief, Wife acknowledges that pursuant to 42 Pa.C.S. § 5505, a trial court generally loses jurisdiction to modify its orders after 30 days. ***Id.*** at 11-12. However, Wife argues that a trial court has the authority to modify an order upon a showing of "a fatal defect apparent on the face of the record or some other evidence of extraordinary cause justifying intervention by the court." ***Id.*** at 12 (quoting ***Zehner v. Zehner***, 195 A.3d 574, 579-80 (Pa. Super. 2018). Wife asserts that the "effect given to the terms of the current QDRO by the Pension Administrators is clearly in contravention with the Special Master Recommendation and Decree and rises to the level of a fatal defect on the face of the record." ***Id.*** at 10. We disagree.

A "trial court has broad discretion to modify or rescind a QDRO within thirty days of the entry of the QDRO, but after thirty days the trial court may reconsider a QDRO only if there is a showing of extrinsic fraud or other extraordinary cause." ***Stockton v. Stockton***, 698 A.2d 1334, 1337–38 (Pa. Super. 1997); 42 Pa.C.S. § 5505. "[E]xtraordinary circumstances exist in limited circumstances." ***Hayward v. Hayward***, 808 A.2d 232, 236 (Pa. Super. 2002). For instance, the parties' mutual mistake, misunderstanding

about the terms of the agreement, or dissatisfaction with counsel does not empower the lower court to modify the QDRO. *Stockton*, 698 A.2d at 1338. However, extraordinary circumstances do exist where there is a fatal defect apparent on the face of the record. *Hayward*, 808 A.2d at 236.

Instantly, the trial court agreed with Wife's assertion that the Pension QDRO is inconsistent with the Special Master's Recommendation and the Divorce Decree. In its Opinion, the trial court made findings that 1) Husband's early retirement subsidy is part of the marital estate; 2) Wife is entitled to 55% of Husband's pension with no qualifications or limitations; 3) Wife "should have been entitled" to a share of Husband's early retirement subsidy as determined by application of the coverture fraction.[2] Trial Ct. Op., 10/25/19, at 17.

Despite these findings, the trial court concluded that Wife failed to prove "extrinsic fraud or extraordinary circumstances which would warrant amendment in the case before us" because Wife was aware of the "Rule of 85," reviewed the Pension QDRO but did not request any amendments prior to filing, and included language in the QDRO that is was the parties intent to

---

[2] "A coverture fraction is used to calculate the marital portion of a pension plan: the denominator of the coverture fraction is the number of months the employee spouse worked to earn the pension benefit and the numerator is the number of such months accrued during the marriage prior to final separation." *Conner v. Conner*, 217 A.3d 301, 317n.7 (Pa. Super. 2019) (citing 23 Pa.C.S. § 3501(c))

accept the terms of the QDRO without regard to any other document. *Id.* at 19-22. The trial court opined:

> Here, there is no dispute that Wife was aware of the "Rule of 85" provision of Husband's pension plan during the marriage. Both parties were represented by counsel at all times and had ample opportunity to review the terms of the QDRO and request that any changes be made. If Wife had objected to the inclusion of Section 9 or the absence of any provision regarding Husband's potential early retirement benefits or had noted that the terms of the QDRO deviated from the award of benefits provided by the Divorce Decree, she could have raised the issue prior to its entry as a [c]ourt Order. Instead, Wife requested no substantive changes, signed the document, and it was approved by the [c]ourt upon Wife's own Motion.
>
> Wife's misunderstanding of the QDRO's terms or failure to consider the impact of Paragraph 9 on the benefit assigned to her does not amount to extrinsic fraud or extenuating circumstances. The fact that she may not have considered the effect of the language of the QDRO on any benefits she might or might not receive in the event Husband elected to take early retirement under the "Rule of 85," knowing of the existence of that option for Husband, does not justify any change at this juncture.
>
> Paragraph 17 of the QDRO provides that, "[t]he [c]ourt shall retain jurisdiction with respect to this Order to the extent required to maintain the original intent of the parties **as stipulated herein**." (Exhibit 4, emphasis added). Both parties signed the QDRO, thus indicating their intent to accept the terms set forth in the QDRO without regard to any other document."

*Id.* at 19-22. Our review of the record reveals that the evidence supports the trial court's findings and the trial court did not misapply the law. Accordingly, we find no abuse of discretion.

Wife cites *Zehner, supra*, and *Hayward, supra*, to support her argument that because the Pension QDRO is inconsistent with the Special Master's Recommendation and the Divorce Decree, there is a fatal defect on

the face of the record. Wife's Br. at 12-17. However, Wife's argument is unavailing as both cases are easily distinguished from the instant case.

In both *Zehner* and *Hayward*, this Court held the trial court had jurisdiction to modify a QDRO more than thirty days after the trial court entered the order because an incorrect coverture fraction was used, resulting in the former spouse receiving a percentage of the entire pension rather than a percentage of the marital portion of the pension. *Zehner*, 195 A.3d at 576, 581; *Hayward*, 808 A.2d at 236. In both cases, this Court held that the use of an incorrect coverture fraction constituted extraordinary circumstances because there was a fatal defect on the face of the record. Here, the parties did not use an incorrect coverture fracture, but rather failed to address an issue the parties were aware of at the time they executed the original QDRO. Thus, this awareness and subsequent failure to address the issue does not constitute an extraordinary circumstance and is not a fatal defect. Accordingly, Wife's reliance on *Zehner* and *Hayward* is misplaced and her argument is unpersuasive.

In conclusion, the trial court did not abuse its discretion when it concluded that it lacked jurisdiction to modify the Pension QDRO, and, thus, we affirm the trial court's Order denying Wife's Petition for Special Relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/30/2020